IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARK WAYNE JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | NO. 5:10-CV-73 (MTT) |
| | : | |
| DR. EDWARD H. BURNSIDE, *et al.*, | : | |
| | : | Proceedings Under 42 U.S.C. § 1983 |
| Defendants. | : | Before the U.S. Magistrate Judge |
| _____ | : | |

### RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Dr. Edward H. Burnside and Nurse Calvin Ramsey. Doc. 83. Because Plaintiff Mark Wayne Jackson has failed to demonstrate a genuine issue of material fact regarding Defendants' alleged deliberate indifference to Plaintiff's serious medical needs and because Defendants have shown that they are entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that Defendants' motion be **GRANTED**.

PROCEDURAL HISTORY

On February 24, 2010, Plaintiff Mark Wayne Jackson filed his Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Dr. Edward H. Burnside and Nurse Calvin Ramsey were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Doc. 1. Plaintiff alleges that Defendants failed to treat his hip, back, and ankle injuries while Plaintiff was incarcerated at Men's State Prison (MSP) and that Defendants refused to carry out the medical treatment prescribed by Plaintiff's previous physicians. Id.

Following a frivolity review of the Complaint pursuant to 28 U.S.C. § 1915A, service was ordered upon Defendants Dr. Burnside and Ramsey. Doc. 6. On May, 26, 2010, a summons

1

was returned executed as to Defendant Ramsey. Doc. 13. On February 2, 2011, a summons was returned executed as to Defendant Burnside. Doc. 19. After Defendants failed to answer or otherwise respond to the Complaint, an entry of default issued against Defendants on February 22, 2011. Following Defendant's Motion to Vacate the Clerk's Entry of Default (Doc. 27), the Court vacated the entry of default on October 4, 2011 (Doc. 42). On October 13, 2011, Defendants filed a Motion to Dismiss. Doc. 44. On July 27, 2012 the Court adopted a Recommendation (Doc. 71) to grant in part and deny in part Defendants' Motion to Dismiss (Doc. 76). Following the Court's order, Plaintiff's Eight Amendment claims against Defendants in their individual capacities remain. Defendants filed the instant Motion for Summary Judgment on January 10, 2013. Doc. 83.

## FACTUAL BACKGROUND

Viewed in a light most favorable to Plaintiff, the facts of the case are as follows: From 2005 until 2012, Plaintiff was incarcerated at various prisons within the Georgia Department of Corrections. Pl. Dep. at 10, 34 (Doc. 88). Both prior to and during his incarceration, Plaintiff suffered injuries to his left leg. Id. at 17-18, 20; Compl. (Doc. 1). In his youth, Plaintiff broke his left femur, causing him to be in a body cast for two years. Pl. Dep. at 17-18, 20 (Doc. 88). Despite his previous injury, Plaintiff was able to walk unassisted when he entered the prison system in 2005. Id. at 34.

On February 19, 2006, Plaintiff fell and injured his left hip, knee, and ankle while he was incarcerated at Wheeler Correctional Institution (Wheeler). Compl. (Doc. 1). Plaintiff alleges that doctors diagnosed Plaintiff with a broken left hip, knee, and ankle. Pl. Dep. at 25 (Doc. 88). Plaintiff contends that his injuries required immediate surgery. Compl. (Doc. 1). Plaintiff also contends that he was transferred to a hospital on June 22, 2006, for surgery. Id. Plaintiff

maintains that a physician performed surgery for Plaintiff's injuries and that further surgery was recommended. Id.; Pl. Dep. at 35 (Doc. 88). Plaintiff states that numerous physicians recommended that Plaintiff receive a hip replacement, knee replacement, and ankle replacement. Pl. Dep. at 35 (Doc. 88).

On May 21, 2008, Plaintiff was transferred to MSP, where he remained until October 18, 2010. Id. at 23. Plaintiff arrived at MSP in a wheelchair. Id. Plaintiff contends that he began seeking medical treatment from Defendants Dr. Burnside and Ramsey upon his arrival at MSP. Id. Plaintiff alleges that Defendants ignored his requests for treatment and that Defendant Dr. Burnside refused to carry out any of the treatment ordered by Plaintiff's previous physicians. Id. When Plaintiff complained of his injuries, Defendant Dr. Burnside allegedly told Plaintiff that he was "full of crap." Pl. Compl. (Doc. 1). Plaintiff alleges that he made numerous requests to Defendant Ramsey seeking medical treatment, all of which were ignored. Id. Plaintiff asserts that he did not received treatment for his injuries in the four-plus years following his surgery and that his back, hip, and ankle injuries have grown significantly worse. Id.

In support of their motion, Defendants have provided Plaintiff's medical records, which paint a picture remarkably different from Plaintiff's allegations. The seven volumes of medical records contain over 550 pages detailing Plaintiff's medical treatment while he was incarcerated. Med. Rec. (Docs. 83-5 to 83-11). Following Plaintiff's fall at Wheeler, Plaintiff was examined by medical staff. Id. at 562 (Doc. 83-11 at 61). Despite Plaintiff's complaints of sharp pain, Plaintiff's examination showed "no crepitus, no redness, swelling or deformity of any area." Id. Plaintiff also had a full range of motion while experiencing some pain. Id. In the following months, Plaintiff continued to experience pain and a reduced range of motion in his left leg. Id. at 550-60 (Doc. 83-11 at 49-59). In June 2006, doctors performed an MRI on Plaintiff's left knee,

3

which was negative. Id. at 548 (Doc. 83-11 at 47). In July 2006, Plaintiff's medical records indicate that despite a negative x-ray and negative MRI, Plaintiff continued to complain of leg pain and began to walk with his leg and foot positioned abnormally. Id. at 541 (Doc. 83-11 at 40).

Because Plaintiff continued to experience pain and walk with a limp, Plaintiff was given more x-rays and referred to an orthopedist. Id. at 526-29 (Doc. 83-11 at 25-28). The orthopedist did not note any major problems but recommended crutches and a CT scan for Plaintiff. Id. at 525 (Doc. 83-11 at 24). A CT scan was performed on Plaintiff on October 31, 2006, which showed no acute fractures. Id. at 520-21 (Doc. 83-11 at 19- 20). The CT scan also showed a deformity in Plaintiff's left femur due to a previously healed fracture, and further evaluation was recommended. Id. at 98 (Doc. 83-10 at 48). In December 2006, another CT scan was performed, showing no fracture or dislocation. Id. at 97 (Doc. 83-10 at 48). The orthopedist also found no pathology, and Plaintiff's MRI was normal. Id. at 474 (Doc. 83-9 at 33). Plaintiff's medical records indicate that no doctors during this time period recommended surgery for Plaintiff. See id. at 483-84 (Doc. 83-9 at 42-43).

Plaintiff continued to experience pain and receive treatment for his left leg in various facilities before arriving at MSP. See generally. Med. Rec. (Docs. 83-5 to 83-11). Although Plaintiff arrived at MSP in a wheelchair and requested that he keep the wheelchair, Plaintiff was given a medical profile for crutches when he arrived at MSP. Id.; Med. Rec. at 287 (Doc. 83-7 at 64). Plaintiff informed Defendants on numerous occasions that he had broken his hip, leg, and ankle and that doctors had prescribed surgery for Plaintiff. Pl. Dep. at 33 (Doc. 88); Burnside Aff. (Doc. 83-3). Defendant Dr. Burnside reviewed Plaintiff medical records and did not see any recommendation for surgery. Burnside Aff. (Doc. 83-3). Although one x-ray mentions a fracture

4

in the knee, Plaintiff's records show that various x-rays and scans routinely showed no fractures or broken bones. See Med. Rec. Docs. 83-5 to 83-11).

Despite Defendant Dr. Burnside's belief that Plaintiff was misrepresenting his medical history, Defendant Dr. Burnside continued to treat Plaintiff's injuries due to Plaintiff's complaints of pain and unusual range of motion in his left foot. Defendant Dr. Burnside reissued a wheelchair for Plaintiff shortly after his arrival at MSP and repeatedly prescribed a wheelchair and leg brace for Plaintiff. Med. Rec. at 256, 260-61 (Doc. 83-7 at 37-38). Plaintiff was also prescribed pain medications throughout his incarceration at MSP. See, e.g., id. at 256-59, 340-46.  In February 2009, Defendant Dr. Burnside prescribed physical therapy for Plaintiff, attempting to improve Plaintiff's condition. Id. at 324, 356 (Doc. 83-7); Burnside Aff. (Doc. 83-3). The physical therapy was unsuccessful. Id.

Months prior to Plaintiff's filing of the instant lawsuit, Defendant Dr. Burnside referred Plaintiff to see an orthopedist. Med. Rec. at 189 (Doc. 83-6). The orthopedist echoed the opinions of Plaintiff's previous physicians that there was a deformity of Plaintiff's left femur due to old trauma, but there were no acute fractures or dislocations in Plaintiff's leg. Id. at 95 (Doc. 83-10 at 45). Since Plaintiff filed the instant lawsuit, Defendant Dr. Burnside referred Plaintiff to a neurologist, who found no evidence of problems with Plaintiff's nervous system. Id. at 188 (doc. 83-6 at 75).

LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Cleotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." <u>Id.</u> at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. <u>Anderson</u>, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

DISCUSSION

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by failing to treat Plaintiff while he was incarcerated at MSP, causing undue delay in Plaintiff's medical treatment, and failing to carry out the prescribed treatment of Plaintiff's previous physicians. Plaintiff's claims are based on his allegations that his previous physicians recommended surgery for his broken hip, knee, and ankle, and that Defendants Dr. Burnside and Ramsey refused to provide Plaintiff with any treatment for his injuries. Plaintiff's medical records contradict Plaintiff's allegations, and Plaintiff has failed to present any evidence to

support his claims. As such, Plaintiff has failed to demonstrate a genuine issue of material fact, and Defendants have shown that they are entitled to judgment as a matter of law.

To create genuine issues of material fact, Plaintiff must point to evidence that Defendants were deliberately indifferent to his serious medical needs. To establish deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort claim, the prisoner must show that an injury was caused by the defendant's wrongful conduct. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

It is not enough, then, to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The elements required to prove the subjective component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under 42 U.S.C. § 1983. Taylor, 221 F.3d at 1258. A prisoner cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985). Such

course of treatment claims, by definition, involve the "exercise of professional judgment" and as such are not actionable. Estelle, 429 U.S. at 105.

In this case, there is insufficient evidence to create a genuine issue of material fact regarding Plaintiff's medical treatment at MSP. The majority of Plaintiff's claims against Defendants arise from Defendants' alleged failure to treat Plaintiff's hip and leg injuries during the two years Plaintiff was incarcerated at MSP. There is significant conflict between Plaintiff's testimony and Plaintiff's medical records regarding his treatment at MSP. Although courts are required to view the evidence in the non-movant's favor, courts need not accept the non-movant's version of the events when his version is contradicted by his medical records. Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990); Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987). Despite Plaintiff's allegations, the medical records clearly indicate that Plaintiff was treated for his injuries throughout his time at MSP.

Although Plaintiff alleges that Defendants failed to treat him at MSP, Plaintiff's voluminous medical records show that he received treatment from Defendant Dr. Burnside on numerous occasions. Defendant Dr. Burnside reviewed Plaintiff's medical records, observed Plaintiff, and prescribed what he believed was the necessary treatment for Plaintiff. Defendant Dr. Burnside prescribed Plaintiff pain medication, allowed Plaintiff to use a wheelchair, and prescribed physical therapy for Plaintiff's injuries. Plaintiff's medical records show that he was also treated by various specialists for his hip and leg throughout his incarceration due to his continuous complaints of pain, deformity in his left femur, and unusual range of motion in his foot. Plaintiff's claims that he broke his hip, knee, and ankle due to his fall at Wheeler, however, were never verified by numerous x-rays, MRIs, and scans. Although Plaintiff was not satisfied

by the treatment he received at MSP, such course of treatment claims are not actionable under the Section 1983. See Estelle, 429 U.S. at 105.

Plaintiff also contends that Defendants were deliberately indifferent to his serious medical needs by causing undue delay in his medical treatment. To establish a claim of deliberate indifference based on a delay in medical care, a prisoner must establish that he suffered increased injury due to the delay. See Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007). In determining whether delay in treatment amounts to deliberate indifference, courts should consider: (1) the seriousness of the medical need, (2) whether the delay worsened the medical condition, and (3) the reason for the delay. Id.

Using these factors, any delay in Plaintiff's treatment does not amount to deliberate indifference. Any alleged delay in treatment was based on Defendant Dr. Burnside's belief that Plaintiff was misrepresenting his medical history. Because Plaintiff's medical record did not support his claims that he suffered a broken hip, knee, and ankle, Defendant Dr. Burnside did not pursue aggressive treatment when Plaintiff first arrived at MSP. Because Plaintiff continued to complain about his leg, however, Defendant Dr. Burnside allowed Plaintiff to use a wheelchair and prescribed physical therapy. Additionally, because Plaintiff's condition did not appear to improve, Plaintiff was eventually referred to an orthopedist and a neurologist. Despite Plaintiff's continued complaints, no physician was able to discern the cause of Plaintiff's alleged pain.

Moreover, it does not appear that Plaintiff's condition was worsened by any delay in treatment. Plaintiff's fall at Wheeler occurred two years before he was transferred to MSP, and Plaintiff allegedly suffered pain and walking difficulties throughout those two years. Plaintiff contends that he was in constant pain and was in a wheelchair both before and at the time he entered MSP. Although Plaintiff's symptoms continued, Plaintiff has not presented sufficient

evidence that his conditioned worsened while he was at MSP. At most, Plaintiff's claims against Defendants for not providing more aggressive treatment sooner give rise to medical malpractice. Such course of treatment claims are not actionable Section 1983. See Estelle, 429 U.S. at 105.

Plaintiff alleges that Defendants refused to allow Plaintiff to receive surgery for his injuries after further surgery was prescribed by outside physicians. An inmate can establish that a prison official was deliberately indifferent to his serious medical needs by showing that the official intentionally interfered with prescribed treatment. Marsh v. Butler County, Ala., 268 F.3d 1014, 1061-62 (11th Cir. 2001). Additionally, medical treatment cannot be refused for monetary reasons. See Ancata v. Prison Health Systems, 769 F.2d 700, 704 (11th Cir. 1985).

Because there is nothing in Plaintiff's medical records indicating that he ever received surgery or was prescribed further surgery, Plaintiff's claims are without merit. Plaintiff contends that he received surgery in 2006 for his broken leg, hip, and back, and that further surgery was recommended by his doctors. Plaintiff contends that Defendants refused to carry out the prescribed treatment due to medical expenses. Plaintiff's allegations are belied by his medical records. Plaintiff's medical records contain numerous x-rays and scans showing that Plaintiff's hip and ankle were not broken. Although one x-ray shows that Plaintiff may have had a fracture in his knee, the same x-ray showed that no significant abnormality was demonstrated. The overwhelming majority of Plaintiff's scans showed only an abnormality of Plaintiff's left femur, which Defendant Dr. Burnside believed to be caused by Plaintiff's broken femur suffered many years prior to his incarceration. Nothing in Plaintiff's medical records shows that surgery was ever performed or ever recommended. As such, there is no evidence that that Defendant Dr. Burnside or Ramsey refused Plaintiff prescribed treatment. Although Plaintiff makes conclusory

allegations that his medical records are incomplete and falsified, Plaintiff has provided no evidence to support his allegations.

In sum, Plaintiff's claims that that he was refused treatment for his broken hip, knee, and back are contradicted by his medical records. In fact, Plaintiff's medical records, which contain medical opinions and testing from various physicians both inside and outside the prison system, show that Plaintiff did not suffer the injuries that he alleges. Although it is undisputed Plaintiff suffers from a leg and foot deformity that cause him pain and the inability to walk without assistance, Plaintiff has failed to present evidence that Defendants did not provide him with adequate medical care. Plaintiff's medical records show that physicians continuously provided Plaintiff treatment and attempted to determine the cause of Plaintiff's complaints. As such, Plaintiff has failed to show that Defendants were deliberately indifferent to his serious medical needs.

## CONCLUSION

Because the evidence in the record of this case is insufficient to permit a finding that Defendants were deliberately indifferent to Plaintiff's serious medical needs, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 11th day of Febuary, 2013.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge